# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH WOODENS,** | : |
| **Petitioner** | : |
| | :     **CIVIL ACTION NO. 3:14-0212** |
| **v.** | : |
| | :      **(Judge Mannion)** |
| **KENNETH CAMERON,** *et al.,* | : |
| **Respondents** | : |

## MEMORANDUM

## I.   Procedural Background

On February 7, 2014, Joseph Woodens, an inmate presently confined at the Pine Grove State Correctional Institution, Indiana, Pennsylvania (SCI-Pine Grove), filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. §2254. (Doc. 1). The required filing fee has been paid. Petitioner is challenging his 2008 conviction and his LIFE, without parole, sentence imposed by the Dauphin County Court of Common Pleas for first degree murder.

On March 6, 2014, Petitioner completed and filed a *Miller/Mason* Notice of Election indicating that he wished to withdraw his original petition and file an amended petition. (Doc. 7). *See* United States v. Miller, 197 F.3d 644 (3d Cir. 1999); Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).

By Order dated April 14, 2014, Petitioner's amended petition, memorandum of law and exhibits were served on Respondents. (Doc. 10). A

response and traverse were filed. (Docs. 17, 19).

By Order dated April 8, 2016, the Court, upon review of the record, determined that, while the Respondent had filed a partial answer to the petition for writ of habeas corpus, contrary to this Court's order to show cause, no supporting memorandum had been filed. (Doc. 21). Additionally, the Court noted that, while the Respondent contends that the issues raised in the Petitioner's post-conviction proceedings have not been exhausted and should therefore be dismissed, the Respondent has not addressed whether the issues raised by the petitioner on direct appeal have been exhausted or should be considered on their merits. Id. Thus, the Court ordered the Respondent shall file a memorandum of law setting forth all of the relevant facts and the procedural history of the petitioner's case. Id.

On May 27, 2016, in accordance with this Court's April 8, 2016 Order, a response to the petition was filed. (Doc. 24). No traverse has been filed. For the reasons outlined below, the petition for writ of habeas corpus will be denied.

## II.    **Factual Background**

The following background has been extracted from the Pennsylvania Superior Court's January 14, 2011 Memorandum Opinion affirming Petitioner's judgment of sentence. (Doc. 24-2, Commonwealth v. Woodens, No. 216 MDA 2009, Superior Court Opinion at pp. 1-3).

Following a jury trial, Appellant, along with his codefendant, Lahme Perkins (hereinafter "Perkins"), was found guilty of Murder of the First Degree, Criminal Conspiracy and Firearms not to be Carried without a License.[1] These convictions arose out of the shooting death of the nineteen (19) year old victim, Quinton Robinson (hereinafter "the victim") as he sat on a park bench in a playground. In its Memorandum Opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court thoroughly and adequately sets forth the relevant facts of this case. **See** Trial Court Memorandum Opinion filed 7/1/09, at 1-13. As such, we will not restate them and incorporate them by reference herein.

Appellant was sentenced to a mandatory life sentence on the murder charge along with sentences of ten (10) years to twenty (20) years in prison on the criminal conspiracy charge and two (2) years to four (4) years in prison on the carrying a firearm without a license charge, both of which were to run concurrently to the life sentence.

On December 29, 2008, Appellant filed a post-sentence motion requesting a new trial and alleging the jury's verdict was against the weight of the evidence which the trial court denied on January 5, 2009. Appellant filed his notice of appeal on February 3, 2009, and the trial court ordered him to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) the next day. Appellant filed the same on February 25, 2009, wherein he averred the evidence is insufficient to sustain a conviction for first degree murder and conspiracy to commit murder and that "[t]he verdict is against the weight of the evidence."

. . . . . .

[C]ounsel provides the following Statement of the Questions presented for our Review:

I.      Was the evidence presented at trial insufficient to sustain a conviction for the first count, first degree murder?

II.     Was the evidence presented at trial insufficient to sustain a conviction for the second count, criminal

---

[1]18 Pa.C.S.A. §§2502(a), 903(a), 6106(a) respectively.

conspiracy?

III. Did the trial court abuse its discretion in denying Appellant's motion for new trial when the jury's verdict was against the weight of the evidence presented at trial in that it did not support Appellant's conviction of first degree murder?

Id. By Memorandum Opinion dated January 14, 2011, the Pennsylvania Superior Court affirmed the judgment of sentence, finding that "the trial court did not abuse its discretion in rejecting Appellant's weight of the evidence claim in light of the physical and testimonial evidence presented. Specifically, its determination that the jury's conviction on the first degree murder charge was consistent with and therefore not contrary to the evidence as to shock the conscience is supported by the record, and the trial court's refusal to grant a new trial for this reason was proper." Id. No petition for allowance of appeal to the Pennsylvania Supreme Court was filed.

On November 3, 2011, Woodens filed a pro se petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§9541 et seq. (Doc. 14, at 25).

By Memorandum and Order dated March 6, 2012, the PCRA court granted counsel's February 3, 2012, motion to withdraw under the Post Conviction Relief Act, pursuant to Commonwealth v. Turner, 544 A.2d 927 Pa. 1988, conducted an independent review of the record, Petitioner's PCRA petition, relevant statutes and case law, found that Petitioner was not entitled to PCRA relief, and provided him with twenty (20) days notice to respond to

the Court's intention to dismiss the PCRA petition. (Doc. 17-5, at 1-15). Petitioner failed to file a response within twenty (20) days and on March 29, 2012, the PCRA court dismissed the petition. Id.

On April 9, 2012, Petitioner filed a motion for reconsideration, which was dismissed by Order dated April 12, 2012. Id. Petitioner argued that his motion for reconsideration was mailed on March 26, 2012, the last day Petitioner could have responded to the Court's Notice of Intent to Dismiss, and that the mail-box rule applied to his filing. Id. The PCRA court found that Petitioner's failure to mail his motion for reconsideration to the proper filing office, prevented him the protection afforded under the mail-box rule. Id.

On November 12, 2012, Petitioner filed an appeal to the Pennsylvania Superior Court raising the following issues for review: (1) whether the PCRA court erred in failing to accept as timely filed Appellant's *pro se* response to the court's Notice of Intent to Dismiss the PCRA petition; (2) whether the PCRA court erred in failing to consider the substance of the *pro se* response; and (3) whether the PCRA court's recusal is warranted upon remand. (Doc. 17-6, at 1-64).

By Memorandum Opinion dated May 3, 2013, the Pennsylvania Superior Court affirmed the PCRA court's dismissal of Petitioner's motion for reconsideration, finding that Petitioner had "failed to point to any legal authority that would allow him to benefit from the prisoner mailbox rule under these circumstances." (Doc. 17-7). On June 27, 2013, Petitioner filed a

petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on February 11, 2014.

On February 28, 2014, Petitioner filed the instant petition for writ of habeas corpus in which he raises the following challenges to his conviction and sentence:

1. Petitioner's first degree murder conviction represents a violation of due process rights because the Commonwealth did not prove beyond a reasonable doubt every element of first-degree murder.

2. Petitioner's criminal conspiracy conviction represents a violation of his due process because the Commonwealth failed to prove beyond a reasonable doubt every element of conspiracy.

3. Ineffective assistance of trial counsel for failing to protect Petitioner's Fifth Amendment right against self-incrimination, specifically, he alleges that he was not given his rights after he was charged with criminal homicide to which he made incriminating statement to Detective Rivera.

4. Ineffective assistance of trial counsel for failing to impeach Detective Rivera at trial with his preliminary hearing testimony.

5. Ineffective assistance of trial counsel for failing to pursue and/or request suppression of evidence found in Ms. Wise's home after the initial search.

6. Ineffective assistance of counsel for failing to impeach Teven Rainey's trial testimony.

7. Ineffective assistance of appellate counsel for not raising an issue of insufficient evidence to sustain a conviction for carrying a firearm without a license.

8. Ineffective assistance of trial counsel for not objecting to jury verdict slips.

9.      Ineffective assistance of appellate counsel for not raising an issue on direct appeal regarding the verdict slips.

(Doc. 5).

## III.    Discussion

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), went into effect and amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. §2254. A §2254 habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); Estelle, 502 U.S. at 68.

### A. Exhaustion

In considering a §2254 habeas petition, there are two procedural obstacles a petitioner must overcome before the court may reach the merits of the petition. The first is exhaustion of remedies and the second is procedural default. Initially, a petitioner may obtain relief in federal court only

after he has exhausted his state court remedies. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). To exhaust state remedies, a petitioner must give the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The petitioner bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts. To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). "[A] state habeas petitioner must present the "substantial equivalent" of his federal claim to the state courts in order to give the state courts 'an opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 543 (3d Cir. 2014) (quoting Picard v. Connor, 404 U.S. 270, 277-78 (1971)).

Where a federal claim is not fairly presented to the reviewing state court, it may be either unexhausted or procedurally defaulted. A claim is unexhausted "if [the petitioner] has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C.

§2254(c). It is the petitioner's burden to establish that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

A claim is procedurally defaulted where the petitioner's failure to exhaust state remedies is technically excused because state procedural rules preclude him from seeking further relief in state courts. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). Along the same line, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedure rule, the claim is exhausted, but procedurally defaulted. See Coleman, 501 U.S. at 750.

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 223-24 (3d Cir. 2001). To establish "cause," a petitioner must establish that "some objective factor external to the defense" impeded his ability to raise the claim in state court. Murray v. Carrier, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, a petitioner must then also prove "actual prejudice." To establish "actual prejudice," "the habeas

petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 494 (citing United States v. Frady, 456 U.S. 152, 170 (1982). A procedural default may also be excused if a petitioner can demonstrate that a fundamental miscarriage of justice will occur, i.e. that he is "actually innocent" of the crimes against him. Edwards, 529 U.S. at 451; Wenger, 266 F.3d at 223-24. A petitioner can demonstrate a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. The Supreme Court has stated that actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). "[A] petitioner asserting actual innocence . . . must rely on 'reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence'" not presented at trial. Munchinski v. Wilson, 694 F.3d 308, 337-38 (3d Cir. 2012) (citing Schlup v. Delo, 513 U.S. 298, 324 (1995)). A final, very narrow, exception to the procedural default rule was set forth by the United States Supreme Court in Martinez v. Ryan, 566 U.S. 1, 16-18 (2012), wherein the Court found that a petitioner may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when post-conviction review is the first time a petitioner can bring such claims and petitioner had either ineffective collateral appeal counsel or

no counsel at all. The Court cautioned, however, that its holding did not apply to counsel's error in other kinds of proceedings, such as appeals from initial-review collateral proceedings, second or successive collateral petitions, or petitions for discretionary review in state appellate courts. Id. In order to establish such "cause," the petitioner must show that collateral appeal counsel was not appointed or was ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668, 695 (1984). Martinez, 566 U.S. at 13. In addition, the petitioner must demonstrate that the underlying ineffectiveness of trial counsel claim is "substantial" and has "some merit." Id.

In the instant action, Petitioner's ineffective assistance claims (nos. 3-9) were first raised by Petitioner in his November 3, 2011 PCRA petition, which was dismissed on March 29, 2012 by the PCRA court. While Petitioner filed a direct appeal from the dismissal, he limited his appeal to the sole issue of whether the PCRA court erred in not recognizing the prison mailbox rule with respect to his response to the PCRA court's Notice of Intent to Dismiss his PCRA petition. Woodens failed to raise his individual ineffective assistance of counsel claims on appeal to the Superior Court. As such, he has failed to exhaust his state court remedies as to all his ineffective assistance claims (nos. 3-9). The Petitioner has no means by which to now present this issue to the state courts. He has, therefore, procedurally defaulted on the claim. The Petitioner has not, however, attempted in any way to excuse his procedural default by establishing "cause" and "actual prejudice", nor has he

demonstrated a "miscarriage of justice" as outlined above. Consequently, Petitioner's ineffective assistant of counsel claims (nos. 3-9) will be dismissed.

## B. Merits

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. §2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only

rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in §2254(e)(1) applies to factual issues, whereas the unreasonable application standard of §2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. §2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa.

2004) (citing 28 U.S.C. §2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

The Court will address Petitioner's two exhausted claims on the merits.

**1.    Petitioner's first degree murder conviction represents a violation of due process rights because the Commonwealth did not prove beyond a reasonable doubt every element of first-degree murder.**

Petitioner claims that the Commonwealth failed to prove beyond a reasonable doubt every element of the above conviction during trial. (Doc. 5). Pursuant to the Pennsylvania Crimes Code, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. §2502(a). Petitioner argues that "due to the charges that both the Petitioner and co-defendant were convicted of, it must be presumed that both

_____

[2]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. §2254(f).

were charged as principle actors in this crime", thus, "making it the Commonwealth's burden of proving every necessary element constituting murder of the first degree independently and individually as the charge applied to the accused separately." (Doc. 8)

### 2. Petitioner's criminal conspiracy conviction represents a violation of his due process.

Petitioner claims that the Commonwealth failed to prove beyond a reasonable doubt every element of the above conviction. (Doc. 5). Specifically, he claims that "as it pertains to the criminal conspiracy charge as specifically a culpability charge having to be attributed to a principal charge, no evidence presented direct or physical established the Petitioner entered an agreement to commit murder" and "the prosecution never at anytime submitted evidence directly attributed to the Petitioner as an overt act, and also did not prove that the Petitioner possessed any gun or fired any gun." (Doc. 10).

The Third Circuit Court of Appeals has held that the test for insufficiency of evidence is the same under both Pennsylvania and federal law. See Evans v. Court of Common Pleas, Delaware Cnty., Pennsylvania, 959 F.2d 1227, 1232-1233 and n. 6 (3d Cir. 1992).

Principles of due process dictate that a person can be convicted of a crime only by proof of every element of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re

Winship, 397 U.S. 358, 364 (1970); United States v. Ozcelik, 527 F.3d 88, 93 (3d Cir. 2008). In reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. (emphasis in original). Moreover, when the factual record supports conflicting inferences, the federal court must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the court must defer to that resolution. Id., 443 U.S. at 326. Reviewing federal district courts are to refer to the substantive elements of the criminal offense as defined by state law and must look to state law to determine what evidence is necessary to convict on the crime charged. Id., 443 U.S. at 324. For a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson 566 U.S. 650, 656 (2012). "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (internal quotation marks omitted). Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. Marshall v. Lonberger, 459 U.S. 422, 434 (1983).

Here, it is clear from the record that the trial court employed the Jackson standard in deciding the insufficiency issues raised in Petitioner's direct appeal:

> As Appellant's first two issues concern the sufficiency of the evidence, and the conspiracy conviction pertains to the murder conviction, we will consider them together.
>
>> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weight the evidence and substitute our judgment for the fact-finder. Commonwealth v. Abed, 989 A.2d 23, 26 (Pa. Super. 2010) (quoting Commonwealth v. Hutchinson, 947 A.2d 800, 805, 0 (Pa. Super. 2008)).
>
> Commonwealth v. Gezovich, 7 A.3d 300, 301 (Pa. Super. 2010).
>
> "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. §2502(a). In addition, intentional killing refers to a killing "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. §2502(d). Also, in order to convict a defendant of criminal conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.A. §903.
>
> When concurrently considering the sufficiency of the evidence to sustain both an appellant's first degree and conspiracy conviction, our Supreme Court has stated the following:

In the case of first-degree murder a person is guilty when the Commonwealth proves that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. An intentional killing is a killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing. The Commonwealth may prove that a killing was intentional solely through circumstantial evidence. The finder of fact may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body.

To prove conspiracy, the trier of fact must find: 1) the defendant intended to commit or aid in the commission of the criminal act; 2) the defendant entered into an agreement with another engage in the crime; and 3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. In the case of a conspiracy to commit homicide, each member of the conspiracy can be convicted of first-degree murder regardless of who inflicted the fatal wound.

In reviewing a sufficiency challenge, we must evaluate the entire trial record and consider all the evidence received. Furthermore, the trier of fact, in passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

Commonwealth v. Johnson, 604 Pa. 176, 184-185, 985 A.2d 915, 920 (2009), *cert denied,* 131 S.Ct. 250, 79 USLW 3202 (2010) (citations and quotations omitted).

(Doc. 24-2 at 5-7). As the state court properly identified the applicable Supreme Court precedent, the federal habeas court must objectively evaluate whether the state court decision was an unreasonable application of Supreme Court precedent. The Court finds it was not.

The Commonwealth presented testimony from eyewitnesses as well as forensic evidence that proved beyond a reasonable doubt that Petitioner was one of the shooters that deliberately killed the victim, Quinton Robinson, as he sat on a park bench in a playground. Specifically, the supporting notes of testimony reveal the following.

Mr. Kevin Rainey testified that on January 7, 2008, he had been with Quinton Robinson and Basil Sheppard in the playground by Foose School near Hall Manor. As he was leaving with some others, he heard more than six gunshots, ran, looked back, and saw two individuals shooting at Robinson on the ground near the park bench where he and Robinson had just been sitting. Mr. Rainey could not identify the shooters, though he did observe they wore black coats with the hoods up, and one shooter was larger in size than the other. He also noticed the shooters ran through a parking lot toward Sycamore Street near the Cloverly Heights bar.

Mr. Michael Roberson testified that Woodens and Perkins called him on January 7, 2008, after which the three met at Cloverly Heights bar on Sycamore street around 12:00 p.m. Woodens and Perkins were told to leave because Woodens was underage. Woodens and Perkins left, and Mr.

Roberson stayed at the bar until his neighbor came to tell him his home at 1627 Putnam Street had been broken into. When he returned home, he found some broken glass and Woodens and Perkins acting "weird." Mr. Roberson indicated the two men were wearing black hoods and T-shirts, and the police arrived within seconds of his entering the home.

Mr. Sean Price testified that he saw Woodens and another individual standing on Putnam Street. While he identified Woodens, he could not positively identify the other person as being in the courtroom. The taller and bigger one asked Woodens "is that him," to which Woodens replied "No." This conversation made Mr. Price nervous, and he went into the bar around 12:10. Mr. Price has seen the victim, whom he had known since the latter was a child, sitting alone on a bench in the park getting ready to eat while Woodens and Perkins were on Putnam Street. Mr. Price heard nine or ten gunshots and saw Woodens and the other individual he had seen earlier running across the parking lot down Putnam Street wearing black hoodies. He went to the area from which he had heard the shots and saw the victim lying motionless.

Mr. Charles Cook testified that on January 7, 2008, at about one o'clock he was standing outside Cloverly Heights with a view of Putnam Street. He heard gunshots and saw two young men, one short and one tall and both earing dark-colored hoods, running down Putnam Street. The men tried to get into a home located at 1627 Putnam Street, and when they were unable to enter, they ran around the side of the house in the alleyway.

20

Victoria Ortiz testified she lived in Hall Manor at the time of the homicide and had a clear view of the playground from her apartment. She saw the victim sitting at a picnic table in the playground at which time two boys, one taller than the other, ran up behind him. Both boys proceeded to shoot the victim after which they ran in the direction of Putnam Street. Both boys were wearing black hoodies. Before he was shot, Robinson had been talking to two people.

The testimony of various police officers who examined the scene of the murder and evidence obtained from it also linked Woodens to the crimes. Corporal David A. Krumbine testified that he believed within a reasonable degree of certainty that some of the casings recovered from the homicide scene and the bullets retrieved from the victim's body during the autopsy were fired from the .40 caliber weapon discovered at 1627 Putnam Street, and some were fired from the .32 caliber handgun found at 1627 Putnam Street. Mr. Frank Kist, a Pennsylvania State Police DNA analyst, tested samples of blood, saliva, and hair taken from Woodens and Perkins. He determined that DNA obtained from the knotted end of a bandana recovered from 1627 Putnam Street and the .32 firearm matched that of Perkins. No DNA profile was obtained from the .40 caliber weapon due to an insufficient amount of DNA.

Detective Victor Rivera testified he was at the crime scene around 1:20 when he was dispatched to 1627 Putnam Street to locate possible suspects.

Detective Rivera came into contact with Mr. Roberson who was very cooperative and informed him two other men were in the home. When he and other officers called upstairs, Woodens appeared shirtless and wearing dark blue jeans. Detective Rivera described Woodens demeanor as nervous and he refused to descend the stairs. As officers proceeded up the steps, they found the north bedroom to be secured and locked. Detective Rivera heard objects moving around and voices.

Detective Rivera and Woodens engaged in a forty-five minute conversation during which Detective Rivera attempted to negotiate Woodens out of the room. Woodens and Perkins made statements that they were going to kill themselves or come out and "do what they had to do" and "have a shoot out." Woodens also indicated during the negotiations that if they did come out of the bedroom, "our lives are over, we are going to the jail for the rest of our lives, there is nothing you can do for us." When Woodens did exit the room, he initially provided Detective Rivera with an incorrect name, as did Perkins. Woodens also gave Detective River a note which he asked him to get to a family member, and both suspects were heard speaking on cell phones behind the closed doors saying goodbye. Detective David Lau testified a nylon headscarf along with a black hooded jacket and a black flannel long sleeve shirt with a white T-shirt inside were discovered on the floor in the bedroom where Woodens and Perkins had barricaded themselves on the day of the incident.

Surprised the initial search of the home did not reveal the guns, Detective Rivera returned to do a second search three days later on January 10, 2008. After admitting "they messed up," Detective Rivera explained he and Sergeant Sorenson found the guns used in the murder in the basement of 1627 Putnam Street. When detective Rivera read Woodens the criminal complaint at the police station, Woodens asked "[H]ow many times did we hit him. He wanted to know that real bad. He had a grin on his face."

Officer Amy Bright testified she was present when Detective Rivera spoke to Woodens at the police station, and the two were alone in the room after the detective left. Officer Bright explained Woodens spoke to her and said things like "I guess I will never have any babies" and questioned whether one can be married and receive conjugal visits in prison. He also told Officer Bright he did not want to lie to her, because she had been honest with him while he was in custody. He informed her that what had happened that day "was bigger than just this. It's a bigger picture than just a homicide."

Wayne Kenneth Ross, M.D., testified that he performed the autopsy on Robinson, on January 8, 2008, after which he determined his death was clearly a homicide and its cause to be multiple gunshot wounds to the head, neck and chest. The victim had sustained thirteen gunshot wounds, three of which by themselves would have immediately or near immediately fatal. Dr. Ross opined that Robinson had been sitting at a picnic table and was shot in the back after which he rolled or flipped over and was shot multiple times from

the front. The shots occurred three to four feet away or greater. Some shots exited Robinson's body and others remained lodged therein allowing Dr. Ross to recover a total of five (5) bullets.

Taking into consideration all of this evidence as a whole, and viewing the evidence in the light most favorable to the prosecution, the Court finds that the state court's conclusion that there was sufficient evidence at trial to support Petitioner's first-degree murder and conspiracy convictions is not objectively unreasonable.

The evidence amply established that Woodens and Perkins were together prior to the shooting on January 7, 2008, approached the victim from behind and riddled him with bullets while he sat on a park bench. Petitioner was then identified as fleeing the scene with another individual. Police officers later discover Woodens and Perkins inside a locked bedroom at 1627 Putnam Street. DNA and ballistic evidence linked the two men to the crime, as did Wooden's own incriminating statements made to Detective Rivera and Officer Bright. In addition, there was sufficient evidence the murder was intentional, willful, deliberate and premeditated. Dr. Ross testified that three (3) of the thirteen (13) wounds the victim received would have been fatal. The shots were fired from only a few feet away and were inflicted initially from behind and continued after the victim had fallen to the ground in an incapacitated state. Accordingly, Petitioner's claims that Commonwealth did not prove beyond a reasonable doubt every element of first-degree murder and

conspiracy are denied.

## III. <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will issue. A separate Order will be issued.

## IV.   Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be **DENIED**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated:   January 18, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0212-01.wpd